**IT IS ORDERED as set forth below:**

**Date: September 2, 2021**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-66374-JWC |
| JAREIQ AHMAD JOSEF KABARA, Debtor. | CHAPTER 7 |
| CINQ MUSIC GROUP, LLC, Plaintiff, v. JAREIQ AHMAD JOSEF KABARA, and FTR ENTERTAINMENT, LLC, Defendants. | ADVERSARY PROCEEDING NO. 20-06009-JWC |

# ORDER

This matter is before the Court on Cinq Music Group, LLC's Motion to Exclude Opinion

1

Testimony of Defendant's Expert Witness Michael D. Cross, Jr. (Doc. No. 63) (the "Motion"). Defendant Jareiq Ahmad Josef Kabara filed an Opposition to Cinq's Motion (Doc. No. 71) (the "Opposition"), to which Cinq filed a reply in further support of the Motion (Doc. No. 75) (the "Reply"). Having considered the Motion, the Opposition, the Reply, the exhibits attached thereto, and the record in the above-captioned adversary proceeding, the Court will grant the Motion in part as set forth below.

I. BACKGROUND INFORMATION

Cinq initiated this adversary proceeding seeking to pierce the corporate veil to hold Kabara personally liable for FTR Entertainment, LLC's debt to Cinq, to except that debt from Kabara's discharge under 11 U.S.C. § 523(a),[1] and to obtain a judgment against Kabara and FTR ("Defendants") for the entirety of the debt owed to Cinq, including amounts loaned and lost revenue. Specifically, in Count I of the Second Amended Complaint (Doc. No. 47), Cinq alleges Kabara used false representations, false pretenses, or actual fraud to obtain funding from Cinq by misrepresenting that budgeted amounts would be used for – and would be sufficient to produce – music recordings from four different artists. Cinq alleges that Defendants failed to deliver the recordings as promised and that Kabara instead used the funding for improper personal expenses. In Count II, Cinq alleges that Kabara's actions constituted a defalcation while acting in a fiduciary capacity. Count III alleges Kabara committed a willful and malicious injury against Cinq in obtaining and misusing the funds. Finally, Cinq alleges in Count IV that Kabara's actions constituted a disregard of corporate formalities sufficient to pierce the corporate veil and to hold Kabara liable for FTR's debt to Cinq. For those reasons, Cinq seeks to except the debt from Kabara's discharge pursuant to §§ 523(a)(2), (a)(4), and (a)(6) and to obtain a judgment against

---

[1] Unless otherwise indicated, all statutory references contained herein will be to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

Defendants.

In the Motion, Cinq seeks exclusion of testimony from Michael D. Cross, Jr. ("Cross"), an expert witness proposed by Defendants. According to the expert report attached to the Motion as Exhibit 1 (the "Report"), Defendants retained Cross to:

1. Analyze the corporate formation documents for FTR Entertainment LLC;

2. Analyze available financial records to opine as to the adequacy of the capitalization for FTR Entertainment, LLC;

3. Analyze the portions of the Expert Report of G. Tyler Wright, CPA that pertain to Cross's field of specialty; and

4. Analyze whether the facts, as presented, support the requirements of law regarding maintaining corporate structure for FTR Entertainment, LLC.

Cross's qualifications are set forth in Section I of the Report. Licensed to practice law in Georgia and Indiana and in multiple federal courts, Cross's practice focuses on corporate, business, contract, and tax law. Cross received his Juris Doctor from Emory University School of Law and his Master of Laws in Taxation with honors from the University of Alabama School of Law. Cross has practiced law in Georgia since 2000 and served as an adjunct professor of business law and other related courses at Reinhardt University from 2001 to 2011. Additionally, Cross served as an instructor in over forty continuing legal education seminars in matters relating to business, corporate, and tax law.

In the Report, Cross summarizes the opinions he intends to provide should his testimony be admitted. The first opinion states "[t]he corporation formation documents for FTR Entertainment, LLC, filed on or about May 11, 2018, are in compliance with the laws of the State of Georgia." The second opinion, in summary, states that FTR "maintained the structure of a legal

3

entity within the normal course of business operations" and addresses other issues, including accounts of FTR's assets and liabilities, capitalization, payment of employees and clients, maintenance of books and records, and evidence of commingling. The last opinion in the summary states that FTR's "insolvency and bankruptcy filing was precipitated by a lack of sufficient continued capitalization."

Attached to the Report are two Appendices. The first states Cross's methodology: "I have reviewed and analyzed the documents set forth on Appendix 2 in order to determine an expert opinion in this matter. My analysis incorporates the current standards set forth by Georgia Law as such relate to corporate formation, capitalization and structure." This appendix disclaims that Cross offers opinions as to the ultimate issues in the case. The second appendix lists the documents Cross reviewed to form his opinions. Additionally, the parties conducted a deposition of Cross, excerpts of which Cinq attached to the Motion as Exhibit 2 and to the Reply as Exhibit A.

Cinq does not dispute Cross's qualifications as a corporate attorney. Cinq instead contends that Cross's testimony contains inadmissible legal conclusions the Court should not consider. Cinq also argues that Cross's testimony is not reliable and that it would not assist the Court to understand the evidence or to determine a fact in issue. Cinq thus requests exclusion of Cross's testimony. Kabara responds that Cross is an experienced and well-qualified corporate attorney who applied his experience to analyze the documents Defendants provided. Kabara argues Cross is qualified to offer opinions on whether the documents executed in this case and the actions taken by Kabara would amount to disregard of the corporate form.

II.   LEGAL ANALYSIS

   a.   Standards for Expert Witness Admissibility

Federal Rule of Evidence 702 governs expert witness testimony admissibility:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To be admissible under this rule, the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) established three requirements: (1) the expert must be qualified to testify regarding the matters the expert intends to address; (2) the methodology must be reliable; and (3) the expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Trial courts are required "to perform the critical 'gatekeeping' function" concerning the admissibility of expert evidence. *Id.* "[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). The proponent of expert testimony always bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

    b. Testimony as to Legal Conclusions

Cinq first contends the Court should exclude Cross's testimony because it includes inadmissible legal conclusions. Specifically, Cinq argues his opinions that FTR's corporate formation documents complied with Georgia law and that FTR's capitalization was consistent with capitalization requirements as a matter of law are examples of the legal conclusions contained in Cross's intended testimony. Kabara responds that Cross may offer his opinion on the ultimate issues of the case, which include corporate governance and Kabara's actions while controlling the

5

company.

The Court agrees with Cinq that Cross's proposed testimony contains inadmissible legal conclusions. "While it is well established that a qualified expert in a civil case may offer his opinion on an 'ultimate issue' in a case, Fed. R. Evid. 704(a), experts 'may not testify to the legal implications of conduct' or 'tell the jury what result to reach.'" *Commodores Entertainment Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Courts generally exclude "legal expert testimony concerning both what the law is and how it should be applied to the facts of a case." *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005) (noting such testimony invades judge's role). However, where a qualified expert discusses corporate norms based on experience in the industry and how the circumstances of the case diverge or converge with those norms, the expert's testimony is admissible. *Id.* at 1045.

The following excerpts from Cross's Report contain inadmissible legal conclusions because they purport to say what Georgia law is and how that law is applied to the facts of this case:

1. Opinion 1:

    a. "The corporation formation documents for FTR Entertainment, LLC, filed on or about May 11, 2018, are in compliance with the laws of the State of Georgia."

    b. "The records are sufficient to form a Limited Liability Company within the State of Georgia."

    c. "There are no records I have reviewed that would cause me to form the opinion that the purpose of the corporate formation was fraudulent or made in bad faith."

6

2. Opinion 2:

   a. "FTR Entertainment, LLC has maintained the structure of a legal entity within the normal course of business operations."

   b. "This amount appears to be consistent with the amounts set forth in the budget provided by the companies to cover anticipated expenses incurred during the first months of operation of FTR Entertainment, LLC, *which is consistent with capitalization requirements as a matter of law*."[2]

3. Opinion 3:

   a. "This does not lead me to conclude that there was a lack of appropriate capitalization as a matter of law at the time of formation."

Furthermore, any testimony regarding "what Georgia law provides as to what is supposed to be done upon the formation of an entity," whether contracts are binding, whether assets were commingled as a matter of law,[3] and whether disregard of the corporate form supports a determination that the corporate veil should or should not be pierced are all legal conclusions that improperly invade the Court's role. Ex. 2, Cross Dep. 130. As an attorney with extensive experience in corporate law, however, Cross may have experience with corporate governance norms and business industry standards. Cross may testify as to what those norms and standards are and how the circumstances of this case may or may not deviate from those norms and standards.

---

[2] Only the italicized portion of this statement is an impermissible legal conclusion.

[3] *Leathers v. State Farm Mutual Automobile Insurance Co.*, No. 12-cv-00198-SCJ, 2012 WL 13014634 at *3-4 (N.D. Ga. Dec. 3, 2012) (holding that expert witness's opinion that commingling occurred was impermissible legal conclusion where expert simply drew "on the language of the relevant Georgia statutes" on commingling to assert defendants' conduct violated Georgia law). This is not to say an expert witness could not conclude, based on their experience and analysis of the appropriate records, that, factually, commingling occurred. *See Swift Fin. Corp. v. Bath Planet of Mississippi, LLC*, No. 3:15CV846-DPJ-FKB, 2016 WL 3180291, at *7 (S.D. Miss. June 6, 2016) ("[T]he term "commingling" might be a legal conclusion, but it is also factually descriptive.").

7

b. Reliability

Cinq next contends that Cross's opinions are not reliable and should be excluded on that basis as well. Cinq argues that the information upon which Cross relied to form his opinions was insufficient, that Cross should have independently investigated the circumstances of the case, and that Cross did not explain his methodology. Essentially, Cinq argues Cross applied no actual methodology, and the information Cross reviewed was lacking. Kabara responds that Cross relied on his experience and expertise in reviewing and analyzing recorded corporate documents, the documents produced in discovery, and Kabara's responses to the allegations in this case in an explanation sheet regarding the business background and processes of FTR's operations. Cinq correctly notes that the explanation sheet Kabara references is not included in Appendix 2 of Cross's Report, which lists materials he reviewed.

The Court will not exclude Cross's opinions based on a lack of reliability. Although *Daubert* provides a list of specific factors for determining reliability, the test for reliability is flexible. *United States v. Barnes*, 481 Fed. App'x 505, 513 (11th Cir. 2012) (citing *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005)). The Eleventh Circuit noted where the witness is solely relying on experience, "then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Frazier*, 387 F.3d at 1260–61 (citing to the Advisory Committee Note to the 2000 Amendments of Rule 702). "'Good grounds' based on what is known" is still required. *Id*. at 1261 (quoting *Daubert*, 509 U.S. at 590). "A relevant document review and assessment of the testimony in the case can provide a reliable basis for expert opinion." *Hanson v. Mut. of Omaha Ins. Co.*, No. CIV. 01-4238-KES, 2003 WL 26093254, at *6 (D.S.D.

8

Apr. 29, 2003). Years of experience may support the reliability of an expert's conclusions based on knowledge of common practices and specific information from which an expert forms his opinions. *Id*.

Here, Cross reviewed the documents listed in the Report and formed an opinion based on his years of experience with business conduct, knowledge of business industry standards, and the specific information contained in the reviewed documents. Because Cross's testimony will be limited to his experience with corporate governance norms and business industry standards, as opposed to legal conclusions or areas in which Cross is not qualified, the review conducted here is sufficiently reliable for that specific context. Although Cinq challenges the basis for Cross's opinions, these critiques should be exposed through cross-examination and presentation of rebuttal experts, which Cinq will have an opportunity to do at trial. *Id.* at *4 (citing *Ray v. Wal-mart Stores, Inc.*, 120 F.3d 882, 885 (8th Cir. 1997) and noting that attacks on foundation of expert's opinions go to weight or credibility of testimony).

    c. Helpfulness

Finally, Cinq argues that the Court should exclude Cross's proffered testimony because it will not assist the trier of fact, even if his opinions and methodology are found reliable. Cinq asserts that Cross does not have any specialized expertise to assist the Court in understanding the evidence or determining a fact in issue. Cinq argues that his testimony would not concern matters beyond the understanding of an average lay person and would offer nothing more than what the parties' attorneys could argue in closing. Cinq points out that in several instances Cross testified in his deposition that he could not give an opinion because the issue was a fact question or that he needed additional information. Furthermore, Cinq argues that Cross's opinion on the standards for the music industry in covering personal expenses would not be helpful. Cross stated that it is

9

unusual for businesses to cover personal expenses for clients, but he had no opinion on whether the relevant industry (i.e. music) would normally do so.

Cinq also argues that many of Cross's opinions are irrelevant to Cinq's claims. Cross opined that FTR was properly capitalized at its inception and that the bankruptcy was caused by insufficient continued capitalization. Cinq does not dispute that FTR was properly capitalized at inception and does not allege that Kabara's wrongdoing relates to the insufficient capitalization.[4] Finally, Cinq reiterates that these opinions amount to legal conclusions that are not the appropriate subject of expert testimony and amount to nothing more than what lawyers argue in closing. Kabara simply responds that Cross's experience will assist on the issue of whether the corporate documents executed in the case and Kabara's actions would amount to disregard of the corporate form. Cinq again responds that such testimony would amount to an opinion on the legal implications of Kabara's conduct and telling the jury what result to reach, and that such statements are arguments for legal counsel to present.

The Court agrees with Cinq in part. According to *Frazier*, expert testimony meets the helpfulness requirement if "it concerns matters that are beyond the understanding of the average lay person. . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." 387 F.3d at 1263 (citations omitted). As already noted above, Cross's legal conclusions will be excluded. Cross can speak to corporate governance norms and business industry standards but cannot say what the law is or apply law to the facts in this case. In other words, Cross may not say what Georgia law

---

[4] The Court disagrees. Several of the nondischargeability claims in this case relate to whether the funding Cinq initially provided was ever sufficient to produce the recordings as budgeted. Whether FTR was sufficiently capitalized may bear on whether Kabara knowingly misrepresented the necessary funding for production.

requires to pierce the corporate veil or whether Kabara's actions amounted to a disregard of corporate formalities sufficient to do so.

The Court also finds that the following statements from Cross's Report were equivocal, and therefore, unhelpful to the Court:

1. "There are no records I have reviewed that would cause me to form the opinion that the purpose of the corporate formation was fraudulent or made in bad faith."

2. "Though there may be a dispute as to whether there was commingling of accounts maintained by FTR Entertainment, LLC with accounts maintained by Jareiq Kabara, there is no clear evidence of commingling. It is unique to the business industry that personal expenses are covered for clients. Based upon the financial documents reviewed, I am unable to form a final opinion consistent with the analysis made in G. Tyler Wright's Expert Report. Additional evidence would be required."

3. "This does not lead me to conclude that there was a lack of appropriate capitalization as a matter of law at the time of formation."

The Court does not view these statements to be opinions at all, and they provide no insight for the Court to consider. Accordingly, such statements are unhelpful and will be excluded.[5]

Finally, the Court will not permit Cross to testify on matters in which he is not qualified. An expert's testimony must still relate to the subject matter in which he or she is qualified. *Frazier*, 387 F.3d at 1260. Cross does not have specific expertise in music industry practices, as admitted in his deposition, Ex. 2, Cross Dep. 113, and thus cannot testify as to that industry's standards. The Court is further unconvinced at this stage that Cross is qualified to testify on commingling or adequate capitalization matters. The Court will not, however, categorically exclude such

---

[5] Even if found helpful, the Court previously noted some of these opinions are impermissible legal conclusions, which should be excluded on that basis as well.

11

testimony at this stage. Instead, Defendants may *voir dire* Cross at trial to establish his qualification on these issues, and Cinq will have the opportunity to challenge such qualifications through cross-examination. Cross's other testimony will be subject to objections and cross-examination, and Cinq will have the opportunity to present rebuttal witnesses.

### III. CONCLUSION

In sum, Cross may not testify as to what Georgia law provides for a specific subject nor may he testify as to his opinion on how the law would apply to the facts of this case. Cross is limited to testifying about his experience with corporate governance norms and business industry standards and how the circumstances of this case may or may not deviate from those norms and standards. Cross may not testify on music industry standards as he admits he has no specific expertise in that matter. The Court will allow Defendants to *voir dire* Cross at trial to determine his qualifications to testify regarding commingling and capitalization matters. Accordingly,

**IT IS ORDERED** that the Motion is hereby **GRANTED in part** and **DENIED in part** according to the findings contained in this Order.

The Clerk is directed to serve a copy of this Order on all parties of record in this adversary proceeding.

### END OF DOCUMENT